**Schulte Roth&Zabel LLP**

1152 Fifteenth Street, NW, Suite 850
Washington, DC 20005
202.729.7470
202.730.4520 fax

www.srz.com

Writer's Direct Number
202.729.7461

Writer's E-mail Address
Howard.Schiffman@srz.com

January 29, 2016

**BY ECF**

Honorable J. Paul Oetken
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Citibank, N.A. v. Tormar Associates LLC*, No. 15-cv-1932 (S.D.N.Y)

Dear Judge Oetken:

      We represent Defendant and Counterclaim-Plaintiff Tormar Associates LLC ("Tormar") in the above-captioned matter and write pursuant to the Court's Order, dated January 12, 2016, directing the parties to submit five-page letter briefs on the issue of damages.

      In the Court's November 17, 2015 Opinion and Order granting Citibank's Motion for Judgment on the Pleadings, Your Honor ruled in Citibank's favor on liability, but expressly reserved judgment on the issue of damages, anticipating that briefing or "other proceedings" would be necessary to determine the amount of Citibank's damages. Citibank, however, claims that "the calculation of damages is straightforward," and urges the Court to simply rubberstamp its damages calculation, despite the fact that the law requires Citibank to prove the amount of its damages, which is sharply disputed by the parties, and that there has been absolutely *no* discovery on damages issues.

      Simply put, damages in this case cannot be determined on the pleadings, where Citibank has offered nothing more than a conclusory calculation with no attempt to prove its damages (*See* Compl. ¶ 44 [ECF No. 1]), and Tormar expressly has denied Citibank's calculation (Answer ¶ 44 [ECF No. 9]). Given that dispute, there is no reason this case should not proceed like virtually every other case—now that the Court has found in Citibank's favor on liability, the parties must litigate the issue of damages, which Citibank must prove with sufficient evidentiary matter. Accordingly, for all the reasons set forth herein, the Court should stick with its initial conclusion and set a schedule for further proceedings, as described below, to determine the amount of Citibank's actual damages.

      As an initial matter, the law is clear that Citibank—as the non-breaching party—bears the burden of proof with respect to damages. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 289 (2d Cir.1992) (Newman, J., concurring) ("It is fundamental that proof of damages is part of a plaintiff's burden[.]"); *Raishevich v. Foster*, 9 F. Supp. 2d 415, 417

Honorable J. Paul Oetken
January 29, 2016
Page 2

(S.D.N.Y. 1998) (plaintiff "bears the burden of proving damages with reasonable certainty"); *Cappetta v. Lippman*, 913 F. Supp. 302, 305 (S.D.N.Y. 1996) (burden of proof is on plaintiff "to establish damages and provide some reasonable basis to quantify them"). Here, given the lack of any discovery on damages issues, Citibank has not come close to meeting its burden.

As the Court is aware, Tormar has maintained throughout this case that Citibank forced the liquidation of Tormar's foreign exchange portfolio on January 15, 2015 through Citibank's own options trading desk at prices that were significantly worse for Tormar (and better for Citibank) than the prevailing prices available in the market and then, when the market rebounded shortly thereafter, made money off of Tormar's positions (and/or the transactions Citibank entered into to "flatten out" Tormar's positions). (*See, e.g.*, Countercl. ¶¶ 30-32 [ECF No. 9].) Although Citibank's conclusory damages calculation ignores these issues, under well-settled law, any damages award in Citibank's favor must reflect the impact of those actions on the amount of Citibank's actual losses.

Indeed, the Second Circuit and New York courts repeatedly have held that the aggregate loss suffered by a plaintiff due to a party's contractual breach must be offset by "any benefit or opportunity to benefit" that also accrued to the plaintiff because of the breach, as the defendant "is only chargeable with the net loss" plaintiff incurs. *Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 495 (2d Cir. 1995) (holding that plaintiff's savings on fixed overhead costs as a result of defendant's breach should reduce damages award) (quoting *S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 852 (2d Cir. 1987)). Benefits that must be offset against a plaintiff's damages include not only the fixed costs saved by a non-breaching party in connection with a breach, but also any profits or opportunities gained as a result of that breach. *See, e.g.*, *Stern v. Satra Corp.*, 539 F.2d 1305, 1311-12 (2d Cir. 1976) (affirming district court's finding that damages awarded to a former consultant employed by the defendant for breach of a consulting agreement should be offset by the value of the free time the consultant gained as a result of breach to do business for other clients); *Fertico Belgium S.A. v. Phosphate Chems. Exp. Ass'n Inc.*, 120 A.D.2d 401, 404, 501 N.Y.S.2d 867, 870 (1st Dep't 1986) (holding that, to avoid a windfall for the non-breaching party, new trial was required to determine the amount that damages awarded to fertilizer purchaser after seller belatedly delivered fertilizer must be offset by profits purchaser gained by later reselling the fertilizer in a rising market).

Here, there can be no legitimate dispute that any gains Citibank ultimately obtained on the positions that it obtained from Tormar at below optimal prices (and over Tormar's repeated objections to that pricing) were possible only as a result of Tormar's alleged breach (and Tormar respectfully has sought reconsideration of the Court's holding on that issue). Accordingly, any such profits Citibank reaped on Tormar's positions must be deducted from Citibank's claimed damages. *See, e.g.*, *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 676 F. Supp. 486, 488-89 (S.D.N.Y. 1987) (plaintiff "cannot choose to recover for his injuries yet retain his windfall").

Indeed, courts in this circuit repeatedly have rejected attempts by non-breaching parties—like Citibank here—to obtain windfalls by retaining the profits of such trading while also seeking to recover the full amount of their purported "losses" from the alleged breaching party. For example, in *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F.

Supp. 2d 256 (S.D.N.Y. 2010), certain holders of convertible bonds sought damages for breach of the governing indenture by the issuer of the convertible bonds after the issuer refused to honor their conversion rights. The court granted summary judgment in favor of the holders on the issue of liability, but also held that any damages awarded to the holders after a jury trial must be offset by any profits generated by the holders from trading on short positions against the issuer's bonds after the issuer's breach, explaining:

> The parties do not dispute that had [the issuer] delivered shares upon conversion, those [holders] with short positions would have closed their short positions and would not have engaged in post-breach trades. . . . Accordingly, had [the issuer] performed fully under the Indenture, [holders] with short positions would not have generated earnings on their short positions following conversion.

*Id.* at 289. Similarly, in *Minpeco*, the district court held that damages awarded to a silver futures trader for the defendants' manipulation of the silver market, which diminished the value of the trader's short futures positions on silver, "must be offset by the measure of the increase in value which accrued to [the trader's] own physical silver holdings" as a result of the same market manipulation by the defendants. 676 F. Supp. at 489-90.

Moreover, one court in this district has confronted allegations against Citibank strikingly similar to Tormar's allegations here, and held that Citibank was not permitted to usurp its prime brokerage clients' positions for its own gain. *See Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, No. 12 Civ. 2827 NRB, 2013 WL 1191895, at *1, *8-*9 (S.D.N.Y. Mar. 22, 2013) (holding that plaintiff, another Citibank prime brokerage client, adequately alleged a breach of contract claim against Citibank for "failing to use good faith in determining value of collateral" before seizing the collateral at "rock bottom prices" and engaging in "disingenuous efforts to sell it"). That is precisely what Tormar has alleged occurred here and further proceedings are necessary to determine the impact of that conduct on Citibank's actual damages.[1]

To the extent that Citibank argues that Tormar already has received sufficient discovery on the marks at which Citibank liquidated Tormar's portfolio and/or the profits Citibank ultimately made as a result of the liquidation when the market rebounded, such a claim would be irrelevant and should be rejected out of hand. At the time that the Court issued its opinion on Citibank's Motion for Judgment on the Pleadings, the only documents Citibank had produced were focused on liability and Tormar had not yet had the opportunity to depose any of

---

[1] Citibank argued in its December 23, 2015 position statement regarding damages that the Court should accept its damages calculation without further proceedings because the Court previously rejected Tormar's arguments regarding the prices at which Citibank seized Tormar's positions and Citibank's ultimate profits on those positions. [ECF No. 52, at App'x. A.] As an initial matter, the Court did not directly address either of those issues in deciding Citibank's Motion for Judgment on the Pleadings. [ECF No. 36.] But more to the point here, the Court obviously never considered the impact of these facts on Citibank's damages, which became an issue only upon the Court's finding in Citibank's favor on liability. The law requires the Court to do so.

the Citibank witnesses involved in the liquidation of Tormar's positions or the ultimate disposition by Citibank of those positions.[2]

Moreover, as courts frequently acknowledge, the adjudication of a party's purported liability for breach of contract and the calculation of damages attributable to that party's breach are two separate inquiries that often are informed by unrelated bodies of evidence. *See, e.g.*, *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) ("Logically, liability must be resolved before damages may be considered. Often the evidence relevant to the two issues is wholly unrelated."). Accordingly, where "questions of disputed fact exist with regard to [a plaintiff's] damage calculation, defendants must be allowed to investigate any records that might be relevant to these assessments." *Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship*, No. 05 Civ. 9163 CM MDF, 2006 WL 1982757, at *8 (S.D.N.Y. July 14, 2006) (noting that plaintiff must still "prove the actual amount of damages that it has incurred," despite plaintiff prevailing on liability portion of summary judgment motion); *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 636 (S.D.N.Y. 2005) (explaining that it is "the responsibility of the party seeking damages to provide adequate discovery concerning their amount and the basis of their computation").

Indeed, the sole case Citibank cites in its December 23, 2015 position statement on damages [ECF No. 52, at App'x. A] makes this very point, granting summary judgment on liability only and directing further proceedings on damages where defendant contended that plaintiff had "not provided it with information necessary to challenge [plaintiff's] claim figures, and given the fact that there are complex factual issues surrounding the calculation of the values of exotic derivatives[.]" *JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. De C.V.*, 29 Misc. 3d 1227(A), 920 N.Y.S.2d 241 (Sup. Ct. 2010) (internal quotations omitted).[3]

Accordingly, Citibank's request that the Court grant judgment on the pleadings with respect to its unproven damages calculation must be denied and this case should proceed like any other case after liability has been adjudicated. Tormar respectfully requests that the Court order a schedule directing the parties to proceed with litigation to determine the actual amount of Citibank's damages, beginning with standard discovery, then proceeding to motion practice, and concluding with an evidentiary hearing or trial, if necessary. At the Court's direction, Tormar will submit a proposed schedule for such proceedings or work with Citibank to do so.

---

[2] Tormar sought documents relating to Citibank's profits on the Tormar positions Citibank seized on January 15, 2015, but Citibank refused to produce them. For that reason, on October 7, 2015, Tormar sought a pre-motion conference in anticipation of a motion to compel the production of those documents and certain others that Citibank had refused to produce. [ECF No. 28, at 5.] On October 30, 2015, Magistrate Judge Cott issued an Order deferring resolution of the discovery dispute until the Court ruled on Citibank's Motion for Judgment on the Pleadings. [ECF No. 34.]

[3] In its position statement, Citibank cites this case for the proposition that it had no duty to mitigate its damages under the governing ISDA documents. [ECF No. 52, at App'x A.] Tormar, however, has never argued that Citibank had a duty to mitigate and is not arguing that here; instead, Tormar's point is that to the extent Citibank reaped profits as a result of Tormar's purported breach (and we believe damages discovery will bear that out), those profits must be deducted from Citibank's damages under well-settled Second Circuit law.

Honorable J. Paul Oetken
January 29, 2016
Page 5

      We are available to discuss the foregoing at the Court's convenience.

      Respectfully submitted,

      <u>/s/ Howard Schiffman</u>
      Howard Schiffman

cc:    All counsel (By ECF)